*Hazelrigg, for appellant.*

*Holt, for appellee.*

---

W. F. Stanhope *v.* O. L. Bradley and Wife.

**Guardian and Ward—Presumption of Fraud—Wedding Apparel.**

Where the evidence does not show that a father, at the time he purchased wedding apparel for his daughter, was insolvent, fraud will not be presumed by reason of such gift to his daughter.

### APPEAL FROM FAYETTE CIRCUIT COURT.

February 4, 1873.

OPINION BY JUDGE PRYOR:

There is no doubt but what the boy Milton was the property of Mrs. Bradley. The will of her grandfather directed all of his negroes and other property mentioned in the last clause of that instrument "to be equally distributed and divided or sold and the proceeds divided as my executors may think best, and I request that the negroes be retained in the family if possible."

The father and guardian of Mrs. Bradley was also one of the executors of the will, and from the testimony in the case a sale of the slaves was resorted to, for the purpose of having an equal division and not to change the character of the property. Bidders were present when they were offered and were told of the family arrangement, and on that account declined to bid. Robert Mays was not at that time the statutory guardian of his children, but was one of the executors and authorized by the will to divide the slaves.

He was appointed guardian shortly afterwards, and the two slaves, Milton and Henry, held by him as the property of his children from that time until they were emancipated. There was no money paid by him and he credited the notes executed when the slaves were sold by the amount coming to his children. This was done as he had elected to take the slaves for his wards, and executed the notes in order that a division of them might be made upon fair and equal terms and the slaves retained in the family as disclosed by the will of the grandfather. It was therefore erroneous to charge the surety in the guardian's bond with the value of Milton.

There is no evidence of the insolvency of Mays at the date of his daughter's marriage, and his answer indicates that he was made bankrupt on account of his liabilities as surety created after that time, and even if these liabilities existed prior to the marriage he did not then anticipate the insolvency of the parties for whom he was bound, and doubtless in good faith made the advancements out of his own pocket for the purchase of his daughter's wedding apparel. She had claims upon his generosity and particularly on the eve of her marriage, and it was his duty to make provision for her; at any rate

this court will not presume fraud by reason of these gifts. If the father had been insolvent and had charged the daughter with the goods he furnished her the chancellor doubtless would have given him a credit in his settlement, but the proof in this case is that he gave to the daughter her wedding outfit from his own means and so intended it when the goods were purchased. It is a hardship upon the surety to have to pay the money, but the wants of the daughter prompted him no doubt to collect it, or if not she is entitled to it by reason of the failure on the part of the father to comply with the conditions of his bond as guardian.

The judgment is reversed with directions to credit the same by amount charged for boy Milton and any interest calculated as against the surety, and the remainder of the appellees are entitled to a judgment.

*Kinkead & Buckner, for appellant.*

*Huston & Mulligan, for appellees.*